**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**C.G. et al.,**

                **Plaintiffs,**　　　　　　　　　5:11-cv-1468
　　　　　　　　　　　　　　　　　　　　　　　　　(GLS/DEP)
              v.

**ITHACA CITY SCHOOL
DISTRICT,**

                **Defendant.**
_____

**APPEARANCES:**　　　　　　　　　　**OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Office of Andrew K. Cuddy　　　　　JASON H. STERNE, ESQ.
5888 Main Street
Williamsville, NY 14221

**FOR THE DEFENDANT:**
Bond, Schoeneck & King, PLLC　　　JONATHAN B. FELLOWS, ESQ.
One Lincoln Center
Syracuse, NY 13202

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff C.G. commenced this action, individually and as parent and next friend of plaintiff J.M.G., a child with a disability, against defendant Ithaca City School District ("the District"), seeking attorneys' fees and costs

under the fee-shifting provision of the Individuals with Disabilities Education Act (IDEA).[1]  (*See* Compl., Dkt. No. 1.)  C.G. moved,[2] and the District cross-moved, for summary judgment.  (*See* Dkt. Nos. 7-8.)  For the reasons that follow, both motions are granted in part and denied in part, and C.G. is awarded $17,211.16 in attorneys' fees and related costs.

## II. **Background**[3]

On May 6, 2011, near the end of J.M.G.'s fifth-grade academic year, the District's Committee on Special Education (CSE) convened to discuss his transition from elementary school to middle school.  (*See* Def.'s Statement of Material Facts (SMF) ¶ 3, Dkt. No. 8, Attach. 8.)  At that meeting, the CSE developed an updated Individualized Education Plan (IEP), which was effective until September 14, 2011 (*See* Dkt. No. 8, Attach. 7 at 10-15.)  Seven weeks later, on June 23, counsel for C.G. filed with the District a request for an impartial due process hearing pursuant to N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j), alleging that the District denied J.M.G. a free and appropriate public education (FAPE) and

---

[1] *See* 20 U.S.C. § 1415(i)(3).

[2] Because 20 U.S.C. § 1415(i)(3)(B)(i)(I) restricts eligibility of attorneys' fees to "the parent of a child with a disability," C.G. is referred to throughout as the sole plaintiff.

[3] The facts are undisputed unless otherwise noted.

2

requesting, *inter alia*, annulment of the May 6 IEP. (*See* Dkt. No. 8, Attach. 1 at 9-12.) Pursuant to N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5, C.G. and the District's Director of Special Education, Sheila McEnery, held a resolution meeting on July 7. (*See* Def.'s SMF ¶ 9.) Contending that C.G.'s concerns had not been resolved and an agreement had not been reached at that meeting, however, C.G.'s counsel requested the following day that the Impartial Hearing Officer (IHO) schedule a due process hearing. (*See* Dkt. No. 8, Attach. 1 at 14.) On July 12, the District provided C.G.'s counsel with a "Memorandum of Agreement," purporting to "resolve[] the issues raised in the request for an impartial hearing." (Dkt. No. 8, Attach. 7 at 22; Def.'s SMF ¶ 14.) C.G. rejected the District's memorandum of agreement the following day. (*See* Dkt. No. 8, Attach. 1 at 18.)

Following a hearing held on August 18 and 19, the IHO issued a decision on September 12, finding, *inter alia*, that: the District failed to timely evaluate J.M.G.; the May 6 CSE was improperly comprised in light of the absence of C.G.'s general education teacher; and C.G. was "denied meaningful participation in the CSE." (*Id.* at 74.) The IHO found further that these three shortcomings, cumulatively, and the District's failure to timely evaluate, singularly, resulted in J.M.G. being denied a FAPE, and

3

ordered the District to take a number of remedial measures. (*See id*. at 74-76.) The District appealed the IHO's determination, and, on November 14, 2011, a State Review Officer (SRO) affirmed the majority of the IHO's decision, but annulled those portions of the directive which required the District to "conduct a private evaluation at a specific center within 30 days" and provide J.M.G. with compensatory music classes. (Dkt. No. 8, Attach. 6 at 11-14.)

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

### IV. Discussion

**A.   Prevailing Party**

The first issue about which the parties seek judgment is whether C.G. is a "prevailing party" as that term is defined by the IDEA. (*See* Dkt. No. 7, Attach. 13 at 7-8; Dkt. No. 8, Attach. 9 at 6-10.) The court agrees with C.G. that her success before the IHO and SRO renders her a "prevailing party."

Under the IDEA, a district court may, in its discretion, "award

4

reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Because an IHO decision on the merits constitutes "administrative *imprimatur*," changes the legal relationship of the parties involved, and is judicially enforceable, "a plaintiff who receives IHO-ordered relief on the merits in an IDEA administrative proceeding is a 'prevailing party.'" *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 75-76 (2d Cir. 2005).

The District contends that, in light of its pre-hearing offer to undertake voluntary remedial measures, the decisions of the IHO and SRO did not alter the "legal relationship" between the parties. (*See* Dkt. No. 8, Attach. 9 at 9.) This argument fails for two reasons. First, the fact that an IHO-sanctioned consent decree is sufficient to bestow upon a parent the title of "prevailing party," *see V.G. ex rel. J.G. v. Auburn Enlarged Cent. Sch. Dist.*, 5:06-CV-531, 2008 WL 5191703, at *4-6 (N.D.N.Y. Dec. 9, 2008), indicates that a high correlation between administratively-ordered relief and the measures originally offered by the District does not foreclose a finding that the parent prevailed. Second, as discussed more fully below, the relief ordered by the IHO and upheld by the SRO here is not identical to that offered voluntarily by the District. Accordingly, the IHO decision that the

District deprived J.M.G. of a FAPE, (*see* Dkt. No. 8, Attach. 1 at 74-76), and the SRO's affirmation of that holding, with the exception of annulling the requirement of a private evaluation and compensatory music classes, (*see* Dkt. No. 8, Attach. 6 at 11-14), are sufficient to render C.G. a "prevailing party" at both stages of the underlying administrative process.

## B. Degree of Relief

Next, the District argues that even if C.G. is a "prevailing party," she is barred from receiving attorneys' fees which accrued subsequent to July 12, 2011, the date on which she was provided the memorandum of agreement. (*See* Dkt. No. 8, Attach. 9 at 10-12.) C.G. counters, however, and the court agrees, that she is not restricted to pre-July 12 attorneys' fees because the relief finally obtained by her is more favorable than that originally offered by the District. (*See* Dkt. No. 9 at 1-7.)

Although the IDEA leaves to the discretion of the district court the decision to award reasonable attorneys' fees to a prevailing party, it prohibits recovery of those fees and costs which accrue "subsequent to the time of a written offer of settlement" if: "(I) the offer is made . . . at any time more than 10 days before the [administrative] proceeding begins; (II) the offer is not accepted within 10 days; and (III) the court . . . finds that the

6

relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D)(i).

It is undisputed that the District's written offer was provided to C.G. more than ten days before the impartial hearing, and that she rejected it the following day. (*See* Def.'s SMF ¶¶ 14-15, 18.) The parties disagree, however, as to whether the relief finally obtained by C.G. was more favorable than that offered by the District. Although the measures ordered by the IHO, and affirmed by the SRO,[4] largely mirrored those offered to C.G. by the District, they also provided additional relief. (*Compare* Dkt. No. 8, Attach. 1 at 38-78 *and* Dkt. No. 8, Attach. 6 at 1-14 *with* Dkt. No. 8, Attach. 7 at 22.) Specifically, the IHO ordered the CSE to "reconvene to determine how many group counseling sessions [J.M.G.] missed and

---

[4] C.G. argues, without support, that in assessing the "relief finally obtained," the court should consider not only administratively-ordered measures, but also any concessions made voluntarily by the District. (*See* Dkt. No. 9 at 5-7.) To omit voluntary remedial actions, C.G. contends, would invite a situation in which "a 'mischievous defendant[]' such as [the District], having made an inadequate settlement offer, and having proceeded to hearing, [would] voluntarily perform the actions it offered when it attempted to settle the case, in order to reduce the value of the relief ordered by the IHO." (*Id.* at 7.) To permit a District defendant to avoid attorneys' fees through such voluntary action would amount, according to C.G., to "gamesmanship." (*Id.*) This argument fails to recognize, however, that if the concessions initially offered by a District defendant are sufficient to satisfy the IHO, they were never "inadequate" in the first place. To seek attorneys' fees for achieving results through prolonged litigation which could have been obtained voluntarily from the outset appears to be the only possible "gamesmanship" present in the hypothetical scenario posited by C.G. Accordingly, the court declines to adopt C.G.'s reasoning. *See Auburn Enlarged Cent. Sch. Dist.*, 2008 WL 5191703, at *15 (decreasing plaintiffs' award of attorneys' fees because the degree of relief finally obtained, as measured against that initially offered by the district defendant, was relatively small.)

7

provide compensatory sessions," and to review plans for J.M.G.'s transition into the middle school. (Dkt. No. 8, Attach. 1 at 75.) Additionally, by rejecting the District's memorandum of agreement, C.G. retained "special transportation" for J.M.G., whereas acceptance of the District's offer would have rendered her responsible for J.M.G.'s transportation to and from school.[5] (*See* Dkt. No. 7, Attach. 13 at 10; Dkt. No. 8, Attach. 7 at 22.)

Accordingly, the relief finally obtained by C.G. was more favorable, albeit slightly, than that offered in the District's memorandum of agreement. C.G. is therefore not precluded from receiving attorneys' fees and related costs which accrued after July 12, 2011.

## C. **Appropriate Fees and Costs**

The District contends next that any award of attorneys' fees to which C.G. is entitled should be reduced considerably in light of the relatively minor degree of success achieved. (*See* Dkt. No. 8, Attach. 9 at 13-15.) The court agrees.

"Attorneys' fees are awarded by determining a presumptively

---

[5] The District argues that certain services which C.G. seeks to categorize as relief finally obtained cannot be attributed to the independent hearing because they were already contained in the May 6, 2011 IEP. (*See* Dkt. No. 8, Attach. 9 at 11.) Unlike the other services noted by the District, however, acceptance of the memorandum of agreement by C.G. would have affirmatively forfeited her entitlement to "special transportation." (*See* Dkt. No. 8, Attach. 7 at 22.) Accordingly, the retention of that entitlement constitutes favorable relief.

8

reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours." *Bergerson v. N. Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) (internal citation omitted). "'[T]he most critical factor'" in assessing an award of attorneys' fees, however, "'is the degree of success obtained'" by the plaintiff. *Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir. 2005) (quoting *Hensley v. Eckhart*, 461 U.S. 424, 436 (1983)). Where a plaintiff achieves only limited success, "[t]he district court may either attempt to identify specific hours that should be eliminated, or it may simply reduce the award." *Skold v. Am. Int'l Grp., Inc.*, No. 96 CIV 7137, 1999 WL 405539, at *8 (S.D.N.Y. June 18, 1999) (internal quotation marks and citation omitted); *see Auburn Enlarged Cent. Sch. Dist.*, 2008 WL 5191703, at *15.

### 1. Reasonable Calculation of Hours Expended

Between her three attorneys, C.G. seeks remuneration for a total of 169.5 hours, for which she submitted detailed invoices. (*See* Dkt. No. 7, Attachs. 6-7.) She is credited for the full 11.1 hours spent by attorney Nina Aasen prior to the District's July 12, 2011 written offer, as well as the 27.1 hours spent on the instant fee action and $408.66 in costs. (*See* Dkt. No.

9

7, Attach. 6 at 3-4, 7; Dkt. No. 7, Attach. 7 at 1-3); *see Auburn Enlarged Cent. Sch. Dist.*, 2008 WL 5191703, at *17. The remaining 131.3 hours expended, however, are subject to both specific and general reductions.

First, the District argues, and the court agrees, that it would be unreasonable to award fees for the hours spent by both attorneys, Aasen and Andrew Cuddy, at the impartial hearing. (*See* Dkt. No. 8, Attach. 9 at 14-15.) It is not "per se unreasonable for two or more lawyers to participate in a trial of a case." *K.F. ex rel. L.A. v. N.Y.C. Dep't of Educ.*, No. 10 Civ. 5465, 2011 WL 3586142, at *6 (S.D.N.Y. Aug. 10, 2011). Instead, "[t]he district court should make an assessment of what is appropriate for the scope and complexity of the particular litigation." *Id.* (internal quotation marks and citation omitted). Both Aasen and Cuddy are experienced in the field of education law. (*See* Dkt. No. 7, Attach. 5 ¶¶ 8-12; Dkt. No. 7, Attach. 11 ¶ 4.) Over the course of the underlying two-day impartial hearing, Cuddy's only apparent direct participation was the cross examination of one witness. (*See* Dkt. No. 8, Attachs. 2-5.) Furthermore, "the novelty, complexity and time pressures (or lack thereof) did not require two senior lawyers in attendance at multiple sessions." *K.F. ex rel. L.A.*, 2011 WL 3586142, at *7. Accordingly, C.G.'s award is reduced by the 16.3

hours Cuddy expended by attending the impartial hearing. (*See* Dkt. No. 7, Attach. 6 at 1.)

Next, in light of the substantial similarity between the administratively-ordered relief and that offered by the District on July 12, 2011, and the limited degree of success achieved after that date, C.G. is entitled to only 20% of the remaining 115 hours, or 23 hours. *See Auburn Enlarged Cent. Sch. Dist.*, 2008 WL 5191703, at *15. The total number of reasonable hours for which C.G. is entitled to remuneration is therefore 61.2.

## 2. *Reasonable Hourly Rate*

Attorneys' fees awarded in IDEA cases "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(). A "reasonable hourly rate is the rate a paying client would be willing to pay."[6]

---

[6] In "determining what a reasonable, paying client would be willing to pay," the Second Circuit directed district courts to consider the following non-exhaustive list of factors:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).

C.G. contends, and the District does not dispute, that a reasonable hourly rate for each of her three experienced attorneys is $275. (*See* Dkt. No. 7, Attach. 13 at 11-12; *see also* Dkt. No. 7, Attach. 1 ¶ 11; Dkt. No. 7, Attach. 5 ¶¶ 8-12; Dkt. No. 7, Attach. 11 ¶ 4.) In support of this figure, C.G. offers affidavits from three similarly-seasoned attorneys, each indicating that the hourly rate requested is indicative of the current market rate within this district. (*See* Dkt. No. 7, Attachs. 8-10.) Upon thorough consideration of the factors articulated in *Arbor Hill* and its progeny,[7] and in light of the

---

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008). The following considerations are also instructive:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3, 190 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

[7] The court notes that attorneys Cuddy and Jason Sterne were awarded an hourly rate of $250 in this district in 2010. *See N.C. ex. rel. L.S. v. Oneida City Sch. Dist.*, No. 5:07cv01230, 2010 WL 3981823, at *6 (N.D.N.Y. Oct. 8, 2010). Although it is proper for a court to take judicial notice of rates previously awarded as part of a case-specific inquiry, such figures are not "binding precedent." *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 208-09 (2d Cir. 2005).

evidence offered by C.G. and the District's lack of objection, the court finds the proffered rate of $275 to be reasonable.

The total amount for which C.G. is entitled is therefore $17,238.66, which is comprised of $16,830 for 61.2 hours expended at an hourly rate of $275, plus an additional $408.66 in related costs.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that C.G.'s motion for summary judgment (Dkt. No. 7) is **GRANTED** to the extent that she is entitled to an award for attorneys' fees and costs, but is **DENIED** to the extent that the award is reduced to $17,238.66, which is comprised of $16,830 for 61.2 hours expended at an hourly rate of $275, plus an additional $408.66 in related costs; and it is further

**ORDERED** that the District's cross-motion for summary judgment is **DENIED** to the extent that C.G. is entitled to attorneys' fees and costs, but is **GRANTED** to the extent that C.G.'s final award is reduced to $17,238.66; and it is further

**ORDERED** that the Clerk enter judgment in favor of C.G. in the amount of $17,238.66; and it is further

13

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 24, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court